UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

JOHN BENJAMIN,

      Plaintiff,

 -against-

ANTHONY E. AHERN, ESQ. and
CRAMER & AHERN LAW FIRM,

      Defendants.

------------------------------------------------------------------- X

10-CV-5480 (ARR)(LB)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

On November 29, 2010, plaintiff John Benjamin ("plaintiff") filed a pro se complaint in the instant action against defendants Anthony E. Ahern, Esq. and Cramer and Ahern Law Firm ("defendants"). The complaint alleges malpractice arising from defendants' representation of plaintiff in related real estate and financing transactions. Presently before the court is defendants' motion to dismiss. For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

I. Factual History

Defendants are an attorney and the attorney's law firm, which is located in Westport, Connecticut. Plaintiff was defendants' client from 1998 to 2002. Plaintiff's relationship with defendants began in October 1998, when plaintiff's nephew, Robert McClinton, retained defendants to probate the estate of his brother, Edward Craig. Compl., Dkt. No. 1., at 1. Because McClinton had only a sixth grade education and possessed a limited ability to understand the proceedings, plaintiff acted as McClinton's advisor. Id.

*A.   Purchase of Real Property*

The primary asset of Craig's estate was a piece of real property located at 40 Wildridge Road in Wilton, Connecticut (the "real property"). In probate, that property was transferred to McClinton through a certificate of devise. Jan. 4, 2011 Affirmation of Kira Tsiring, Esq. ("Tsiring Aff."), Dkt. No. 13-3, Ex. A at 34. Subsequently, plaintiff indicated to McClinton that he was willing to buy the real property from him for $200,000. Id. Ex. A at 35. During the sale, which took place from June to September 2001, plaintiff was represented by defendants, and McClinton was represented by other counsel. Id. Plaintiff claims that McClinton agreed to pay him back 20% of the purchase price after the sale in order to pay the outstanding bills on the real property. Compl. at 1. Plaintiff further alleges that, at the closing, defendants advised McClinton to "Run, Robert, Run," suggesting that McClinton should avoid paying the 20% to plaintiff. Id. Plaintiff claims that, after the sale, McClinton disappeared without paying him. Id.

*B.   Mortgage Loan*

In early 2002, after the purchase of the real property, defendants assisted plaintiff in obtaining a mortgage loan. The lender initially refused to approve the loan because of a lien filed against the property by an unlicensed contractor. Tsiring Aff. Ex. A at 37. Plaintiff alleges that, in the process of negotiating with the lender, defendants failed to dispute the lien, and as a result, plaintiff ultimately overpaid the contractor by approximately $5,000. Compl. at 2.

In a letter to the Connecticut Grievance Commission on September 23, 2002, defendants claimed that, although the lien could have been disputed, plaintiff paid the contractor in order to obtain the loan more quickly. Tsiring Aff. Ex. A at 37. In the same letter, defendants also allege that plaintiff left the contractor a threatening voicemail and that plaintiff subsequently agreed to pay the contractor in exchange for the contractor's promise not to bring harassment charges. Id.

Although the terms of the mortgage loan are unclear from the record, the lender eventually approved the loan. Id.

Plaintiff paid defendants $17,510.00 in legal fees for his representation regarding the real property and the mortgage loan. Compl. at 2. After 2002, the parties had no contact. In 2003, Countrywide Mortgage foreclosed on the property. Id.

C.   *Plaintiff's Prior Complaints against Defendants and McClinton*

Plaintiff filed a complaint against defendants with the Connecticut Grievance Commission in September of 2002. Tsiring Aff. Ex. A at 33. After an investigation, the Commission dismissed the complaint. Plaintiff appealed the decision, and on August 19, 2005, the Commission affirmed the dismissal. Id. Ex. A at 28.

Plaintiff claims that, in 2003, he "tracked down" McClinton in Staten Island, where plaintiff sued him in small claims court for the money owed on the real property. Compl. at 1. In March 2003, plaintiff won a judgment against McClinton for $9,957.70. Tsiring Aff. Ex. A at 11. Plaintiff claims that the presiding judge in that action advised him to contact the Connecticut Attorney General's Office regarding defendants' conduct. Compl. at 1-2.

Plaintiff then alerted the Office of the Chief State's Attorney, and in September 2005, that Office informed plaintiff that it would not be taking any action with respect to plaintiff' complaints. Tsiring Aff. Ex. A at 23.

Between 2002 and 2011, plaintiff also wrote several letters to Congressmen, Whitehouse staff, the Connecticut Bar Association, and other entities seeking relief against defendants. Id. Ex. A at 15-24.

II. The Instant Action

In this action, plaintiff alleges that defendants committed malpractice in connection with both the purchase of the real property and the loan procurement. He seeks $2.9 million in damages for loss of property, damage to his credit score, and pain and suffering.

Presently before the court is defendants' motion to dismiss plaintiff's complaint alleging attorney malpractice. Defendants argue that the action is time-barred by the three-year statute of limitations for malpractice claims. Plaintiff argues that the statute of limitations should be tolled because he promptly sought other avenues of relief. Plaintiff also argues that he was prevented from bringing an action within the limitations period because of defendants' undue influence in the Connecticut State courts.

Because plaintiff has failed to allege facts sufficient to justify tolling the statute of limitations or equitable estoppel, the court holds that his action is time-barred. Accordingly, defendants' motion is granted.

## DISCUSSION

I. Legal Standard

A motion to dismiss on statute of limitations grounds should be properly considered as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Jowers v. Lakeside Family and Children's Servs., 435 F. Supp. 2d 280, 283 (S.D.N.Y. 2006). "While a statute-of-limitations defense may be raised in a motion to dismiss . . . such a motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Ortiz v. Cornetta, 867 F.2d 146, 148 (2d Cir. 1989).

In deciding a defendant's motion to dismiss, "the court must accept as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997). The central question is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

When determining the sufficiency of a plaintiff's claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in a plaintiff's complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, and to matters of which judicial notice may be taken. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). "In addition, even if not attached or incorporated by reference, a document upon which [the complaint] solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion." Roth, 489 F.3d at 509 (internal quotation marks and citations omitted; alteration in original).

II. Statute of Limitations

Under New York law, the statute of limitations for a malpractice action against an attorney is three years. N.Y. C.P.L.R. § 214. The statute of limitations begins to run at the date of malpractice, Glamm v. Allen, 57 N.Y.2d 87, 93 (N.Y. 1982), and thus "[w]hat is important is when the malpractice was committed, not when the client discovered it," id. at 95. A claim that is otherwise time-barred may proceed, however, if the statute of limitations was tolled for a sufficient period of time, id. at 93-95, or if the defendant is equitably estopped from invoking the statute of limitations defense, Garcia v. Peterson, 32 A.D.3d 992, 992 (2d Dep't 2006).

In this case, plaintiff alleges that the malpractice occurred between 2001 and 2002, when defendants represented plaintiff in the purchase of real property and in the procurement of a

mortgage loan. The last communication between the two parties occurred prior to September 23, 2002. Therefore, at the very latest, September 23, 2005 was the final date on which plaintiff could have brought this action within the statute of limitations. Plaintiff filed his complaint in this court on November 29, 2010. Accordingly, his complaint is time-barred, unless the statute of limitations was tolled for nearly seven-years or defendants are equitably stopped from invoking the statute of limitations defense.

 *A.   Tolling*

Plaintiff argues that, because he promptly brought the alleged malpractice to the attention of the Connecticut Grievance Commission, various Connecticut State authorities, several members of Congress, and other entities, the statute of limitations should be tolled. The fact that a plaintiff seeks an alternate remedy does not toll the statute of limitations. Mitchell v. Nassau Community College, 265 A.D.2d 456, 456 (2d Dep't 1999) (concluding that plaintiff's pursuit of a complaint with the union's grievance committee did not toll the statute of limitations). Therefore, plaintiff's complaints to various entities regarding defendants' alleged misconduct did not toll the limitations period.

 *B.   Equitable Estoppel*

A defendant may be equitably estopped from raising a statute of limitations defense when his misconduct prevents a plaintiff from filing within the statutory time period. Garcia, 32 A.D.3d at 992 (asserting that equitable estoppel may be appropriate when the "plaintiff was induced by fraud, misrepresentations, or deception to refrain from filing a timely action") (internal quotation marks omitted). The doctrine of equitable estoppel, however, is an "extraordinary remedy, applicable only in circumstances where there is evidence that plaintiff

was lulled into inaction by defendant." East Midtown Plaza Hous. Co v. City of New York, 218 A.D.2d 628, 628 (1st Dep't 1995).

Plaintiff claims that he "tried in vain to get into state courts, but attorney Ahern knows these lawyers who sit in these positions at the state level – on the grievance committee's [sic] in Norwalk, and Stamford – so you have no objectivity and fairness to resolve merits of the case(s)." Memorandum of Law In Opposition to Defendant's Motion to Dismiss, Dkt. No. 14, at 5. Plaintiff's argument that, because defendant Ahern knew individuals on the Grievance Committees, he could not file a complaint in Connecticut State court is frivolous. In any event, his allegations relate to his failure to file a complaint in state court; they have no bearing on why plaintiff failed to file his claim in this court within the applicable statute of limitations period. Defendants are not equitably estopped from raising their statute of limitations defense.

## CONCLUSION

Because plaintiff did not bring file his complaint in this court within the applicable three-year statute of limitations, the court holds that plaintiff's malpractice claim is time-barred under N.Y. C.P.L.R. § 214. Accordingly, defendants' motion to dismiss is granted.

SO ORDERED.

/S/

Allyne R. Ross
United States District Judge

Dated: April 6, 2011
Brooklyn, New York

SERVICE LIST:

**Plaintiff:**
John Benjamin
P.O. Box 0232
New York, NY 10025-0004